IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| REGINA JUANITA FLETCHER | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. TMD 10-3358M |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Regina Juanita Fletcher ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C.§§ 401-433, 1381-83(c).  Before the Court are Plaintiff's Motion for Summary Judgment (Pl.'s Mot. Summ., ECF No. 14-1) and Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 22).  No hearing is deemed necessary.  Local Rule 105.6 (D. Md.).  For the reasons presented below, Defendant's Motion for Summary Judgment is GRANTED.

I. Procedural History

Plaintiff protectively filed her application alleging disability since August 29, 2008 due to "Type 2 Diabetes/hypertension/hyperthyroidism/left-side brain injury that affects the right side of her body." R. at 145, 149.   Her claim was denied initially and on reconsideration.  R. at 70-72, 75-76.  On November 10, 2009, a hearing was held before an administrative law judge

("ALJ") at which Plaintiff and a vocational expert ("VE") testified.  R. at 35-67.  In a decision dated February 17, 2010, the ALJ denied Plaintiff's request for benefits.  R. at 13-30.  The Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision subject to judicial review.  R. at 1-4.

## II.  ALJ's Decision

The ALJ evaluated Plaintiff's claim for DIB using the sequential process set forth in 20 C.F.R. § 404.1520.  At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since her alleged onset date.  At step two, the ALJ determined that Claimant suffered from the following severe impairments: left DeQuervain's disease,[1] obesity and cognitive disorder.  At step three, the ALJ found that her impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1.  The ALJ concluded at step four that, given her Residual Functional Capacity ("RFC") Plaintiff was not capable of performing her past relevant work.  At step five, the ALJ concluded that Claimant was capable of performing jobs that existed in significant numbers in the national economy.  Accordingly, she concluded that Claimant was not disabled.  R. at 13-30.

## III.  Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. §  405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995);

---

[1] "De Quervain's . . . disease is a problem that makes the bottom of your thumb and the side of your wrist hurt.  When you have de Quervain's disease, the ropey fiber (tendon) that helps move your thumb away from your fingers becomes swollen."  http://arthritis.webmd.com/tc/de-quervains-disease-topic-overview

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla, but less than a preponderance, of the evidence presented.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury.  *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).  This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.  *Id*.

## IV. Discussion

Plaintiff argues that the ALJ erred in (1) relying on evidence from her prior folder to find that she did not meet or equal Listing 12.05C; and (2) failing to properly follow the treating physician rule.  For the reasons discussed below, the Court finds that the ALJ did not err.

A.    Listing 12.05C

In support of her argument that the ALJ erred in her evaluation of Listing 12.05C, Plaintiff asserts that it was error for the ALJ to rely on evidence that was not part of the record. In November, 2008, IQ testing on Plaintiff was performed by consultative psychologist Donna Igneizi-Ferraro, Ph.D. which resulted in a "full scale IQ of 56 placing her in the extremely low range of intellectual functioning, with scores in the extremely low range in the verbal and performance scales." R. at 22 *citing* 213-16.  Plaintiff cites to this evidence in support of her

3

argument that she meets Listing 12.05C for mental retardation which requires: (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22"; (2) "[a] valid verbal, performance, or full scale IQ of 60 through 70"; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

In a Psychiatric Review Technique completed by Dr. Payne on December 17, 2008, R. at 221-34, he found the "extremely low scores" reported by Ms. Igneizi-Ferraro inconsistent with Claimant's report of working from 1998-2008. R. at 233. He further noted Plaintiff was under disability previously and "prior folder reviewed". R. at 233. The ALJ relied on Dr. Payne's opinion finding that he "did not find the test results conclusive as the claimant tested with a full scale IQ of 67 after her accident, and the more recent lower test results were inconsistent with the claimant's return to work as a sales manager after the accident." R. at 22.

Plaintiff argues that it was error for the ALJ to rely on this evidence in the prior folder and that it should have been part of the record so that Plaintiff could have the opportunity to "comment or refute the evidence, submit a statement of facts and law that [she] believes apply to the case in light of the evidence; submit written questions to be sent to the author of the evidence or exercise her right with respect to requesting a supplemental hearing and the opportunity to cross-examine the author." Pl.'s Mot. Summ., ECF No. 14-1 at 5 *citing* HALLEX I-2-7-30; *see also* R. at 6—7 (Plaintiff's letter to the Appeals Council); R. at 39 (Plaintiff's argument at the ALJ hearing).

What Plaintiff ignores is that the ALJ's analysis did not end with her finding above. Significantly, the ALJ held:

> *Regardless of the validity of the November 2008 IQ test*, the evidence in this case does not establish Listing 12.05C as it does not meet the requirements of the definitional provisions of the listing. There is no evidence in the record of either deficits in adaptive functioning or the claimant's level of intellectual function prior to the age of 22, typically established by school records or IEP's indicating special educational services.

R. at 22 (emphasis added); *see Sullivan v. Zebley*, 493 U.S. 521 (1990) (holding every element of a Listing must be met). Accordingly, any error for the ALJ to rely on the IQ testing that was not part of the underlying record would be harmless as the evidence in the record simply did not meet the requirements of Listing 12.05C. Indeed, Plaintiff makes no attempt to argue how she meets all of the Listing provisions and does not argue that the ALJ's finding above is error. *See Bowen v. Yuckert,* 482 U.S. 137, 146, n. 5 (1987) (holding claimant has the burden of proving that an impairment meets the criteria of a Listing). As mentioned above, Dr. Payne (and the ALJ) found that the extremely low IQ scores were inconsistent with Claimant's reported work from 1998-2008 as a sales manager. R. at 22, 233. Dr. Payne also noted that the quality of Claimant's responses on her ADL form were inconsistent with IQ scores in the 50s. R. at 233. The Court finds that the ALJ did not err in finding that Claimant did not meet her burden to demonstrate she meets Listing 12.05C.

    B.    <u>Treating Physician</u>

Plaintiff next argues that the ALJ erred by failing to give the proper weight to the opinion of Dr. Fleury. The treating physician rule does not always require adoption of a treating health care provider's opinion. While the ALJ must generally give more weight to a

treating physician's opinion, *see* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig,* 76 F.3d at 590. The ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(e); SSR 96–5p. Pursuant to 20 C.F.R. § 416.927(f)(2)(ii), the ALJ is required to "explain in the decision the weight given to ... any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration]."

In this case, the ALJ gave significant weight to the opinions of state agency physicians Dr. Johnston and Dr. Robbins while not affording the opinion of Claimant's treating physician, Dr. Fleury controlling or even great weight.  R. at 27.  In making this finding, the ALJ found that Dr. Fleury's opinions were inconsistent with other evidence in the record (including the opinions of the state agency physicians) and did not contain sufficient objective findings to support certain limitations.  *Id*.  He specifically found that Dr. Fleury's limitation that Claimant could lift only ten pounds was not supported by objective findings and that there was no evidence to support the limitation on standing or walking given the lack of documented treatment for her plantar fasciitis.  *Id*.  The ALJ also noted that while Claimant was given orthotics for her heel problems, there was no indication she followed up on this treatment.  *Id*.

Plaintiff points to a few references in Dr. Fleury's treatment notes that he was treating her for her left hand impairment with cortisone shots and the use of a splint, that she has tenderness and swelling in her wrist, an inability to grip, needed the use of a splint, ice and

physical therapy.  Pl.'s Mot. Summ., ECF No. 14-1 at 8.  These notes; however, do not provide substantial evidence to refute the ALJ's findings.

     The ALJ cites specific medical findings with respect to both hands.  She had no atrophy evident in her right upper extremity which she found inconsistent with her assertion that she could not use it.  R. at 25.  She exhibited full motor strength in both upper extremities and no neurological deficits.  *Id*.  With respect to her left hand, the ALJ noted that Claimant did not have surgery on her wrist despite the fact that it was recommended by Dr. Kang.  R. at 25, 26.  The ALJ also cited Claimant's testimony that she experiences pain in that wrist only about once a week and uses a brace only occasionally.  *Id*.  In addition, Peninsula Orthopedic Associates noted that Plaintiff's left upper extremity exhibited tenderness, examination of the right side reveals no obvious atrophy and "she seems to use her right hand okay."  R. at 204.  X-Rays of "bilateral wrists including hands, each in 3 views demonstrate no acute fracture, dislocation, arthrosis, or any other pathology."  R. at 276.  Dr. Baumann noted that a motor examination revealed no gross weakness of the upper extremities.  R. at 260.  In sum, the Court finds that the record contains substantial evidence supporting the ALJ's decision to afford great weight to the opinions of the state agency physicians.  Those physicians noted that Claimant could lift up to 20 pounds occasionally and ten pounds frequently, that she can stand, walk or sit about six hours in an eight-hour day and that she has a limited ability to push and pull with her upper extremities as well as some additional limitations.  R. at 27, 235-42, 309-16.  The Court finds that the ALJ's decision to not give Dr. Fleury's opinion controlling weight supported by substantial evidence.  The ALJ provided specific reasons for rejecting the opinion and the Court

7

finds no error.

     V.  Conclusion

     Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED.  A separate order shall issue.


Date: September 24, 2012

                                                      _____/s/_____
                                                      THOMAS M. DIGIROLAMO
                                                      United States Magistrate Judge


Copies to:
W. James Nicoll
Jenkins, Block & Associates, P.C.
The Symphony Center
1040 Park Avenue
Suite 206
Baltimore, MD 21201


Allen F. Loucks
Assistant United States Attorney
United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692